**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Case No. 26-49251 |
| WARRIOR SPORTS HOLDINGS, LLC, | In Proceedings Under Chapter 11 |
| Debtor. ______________________________/ | Hon. Lisa S. Gretchko |

**COVER SHEET FOR MOTION TO USE CASH COLLATERAL OR TO OBTAIN CREDIT**

Debtor, Warrior Sports Holdings, LLC, has filed a motion to use cash collateral or to obtain post-petition financing through its *Motion for Entry of an Order Authorizing the Debtor to Obtain Post-Petition Unsecured Financing* (the "Motion"), which is attached to this Cover Sheet. In accordance with LBR 4001-2(b) (E.D. Mich.), the Debtor has identified below, by page and paragraph number, the location in the Interim Order accompanying the Motion each of the following provisions:

| **Provision** | **Contained in Proposed Order** | **Location in Proposed Order** |
|---|---|---|
| (1) Provisions that grant liens on the estate's claims and causes of action arising under Chapter 5 of the Code. | _____ Yes<br>__X___ No | Page ____, ¶ ____ |

| | | |
|---|---|---|
| (2) Provisions that grant cross-collateralization protection to the prepetition secured creditor (i.e., clauses that secure prepetition debt with categories of collateral that were not covered by the secured party's lien prepetition) other than liens granted solely as adequate protection against diminution in value of a prepetition creditor's collateral. | _____ Yes<br>__X___ No | Page ____, ¶ ____ |
| (3) Provisions that establish a procedure or conditions for relief from the automatic stay. | _____ Yes<br>__X___ No | Page ____, ¶ ____ |
| (4) Provisions regarding the validity or perfection of a secured creditor's prepetition liens or that release claims against a secured creditor. | _____ Yes<br>__X___ No | Page ____, ¶ ____ |
| (5) Provisions that prime any lien without that lienholder's consent. | _____ Yes<br>__X___ No | Page ____, ¶ ____ |
| (6) Provisions that relate to a sale of substantially all of the debtor's assets. | _____ Yes<br>__X___ No | Page ____, ¶ ____ |
| (7) Provisions for the payment of professional fees of the debtor or any committees, including any carve-outs for such payments. | _____ Yes<br>__X___ No | Page ____, ¶ ____ |
| (8) Provisions for the payment of prepetition debt. | _____ Yes<br>__X___ No | Page ____, ¶ ____ |
| (9) Provisions that waive the debtor's exclusive right to file or solicit acceptances of a plan during the time periods specified in 11 U.S.C. § 1121. | _____ Yes<br>__X___ No | Page ____, ¶ ____ |

| | | |
|---|---|---|
| (10) Provisions that require the debtor's plan to be on terms acceptable to the secured creditor. | _____ Yes<br>__X___ No | Page ____, ¶ ____ |
| (11) Provisions that require or prohibit specific terms in the debtor's plan. | _____ Yes<br>__X___ No | Page ____, ¶ ____ |
| (12) Provisions establishing that proposing a plan inconsistent with the order constitutes a default. | _____ Yes<br>__X___ No | Page ____, ¶ ____ |
| (13) Provisions that waive surcharge under 11 U.S.C. § 506(c). | _____ Yes<br>__X___ No | Page ____, ¶ ____ |
| (14) Provisions that address the rights and obligations of guarantors or co-obligors. | _____ Yes<br>__X___ No | Page ____, ¶ ____ |
| (15) Provisions that prohibit the debtor from seeking approval to use cash collateral without the secured creditor's consent. | _____ Yes<br>__X___ No | Page ____, ¶ ____ |
| (16) Provisions that purport to bind a subsequent trustee. | _____ Yes<br>__X___ No | Page ____, ¶ ____ |
| (17) Provisions that obligate the debtor to pay any of a secured creditor's professional fees. | _____ Yes<br>__X___ No | Page ____, ¶ ____ |

[Signature Page Follows]

SCHAFER AND WEINER, PLLC

/s/ John J. Stockdale, Jr.
JOHN J. STOCKDALE, JR. (P71561)
Attorneys for Debtor
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
(248) 540-3340
jstockdale@schaferandweiner.com

Dated: September 2, 2026

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Case No. 26-49251 |
| WARRIOR SPORTS HOLDINGS, LLC, | In Proceedings Under Chapter 11 |
| Debtor. | |
| _____________________________/ | Hon. Lisa S. Gretchko |

**MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION UNSECURED FINANCING**

Warrior Sports Holdings, LLC ("**Debtor**")[1] for its *Motion for Entry of an Order (a) Authorizing the Debtor to Obtain Post-Petition Unsecured Financing* (the "**Motion**") states as follows:

**PRELIMINARY STATEMENT**

Through this Motion, the Debtor requests entry of an interim order (the "**Interim Order**") substantially in the form attached hereto as **Exhibit A**, seeking authority to borrow up to $50,000, and $37,000 to avoid immediate and irreparable harm, consistent with the budget (attached as **Exhibit B**, the "**Budget**") to preserve Debtor's going concern value and maintain the Debtor's continued operations as specified in the Budget.

---

[1] Any terms not defined in the Motion shall have the meaning assigned to them in the Interim Order attached hereto as **Exhibit A**.

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §1334.

2. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2).

3. Venue is proper under 28 U.S.C. §§1408 and 1409.

4. The statutory basis for the relief requested herein is sections 105, 363, 364, and 503 of Title 11 of the United States Code (the "**Bankruptcy Code**")[2], FRBP 4001 and 9014, and Local Bankruptcy Rule 4001-2 (Bankr. E.D. Mich.).

## PROCEDURAL BACKGROUND

5. On August 19, 2026, (the "**Petition Date**"), the Debtor filed a Voluntary Petition under the Bankruptcy Code, commencing the above captioned case (the "**Case**").

6. Since the Petition Date, the Debtor has remained in possession of its assets and is authorized to operate and manage its business as a Debtor-in-Possession under sections 1107 and 1108.

[2] Except as otherwise noted herein, (1) all section references are references to sections of the Bankruptcy Code, (2) all references to "**FRBP**" are references to the Federal Rules of Bankruptcy Procedure, and (3) all references to ECF Nos. are references to docket numbers in the Case.

7. Michael Scott, Jr. ("**Mr. Scott**") is the authorized person for the Debtor and is the responsible person for the Debtor-in-Possession.

8. The Declaration of Michael Scott, Jr. attesting to the accuracy of the facts set forth in support of this Motion is attached hereto as **Exhibit C**.

9. No trustee or examiner has been requested or appointed in the Case, and no official committee of creditors holding unsecured claims or other committees have been appointed in the Case.

10. To preserve the bankruptcy estate through the continued operation of the Debtor's business, the Debtor seeks authority to obtain post-petition financing consisting of an unsecured, multiple-draw, term loan in an amount not to exceed the aggregate principal amount of $50,000 (the "**DIP Loan**", and the obligations owing thereunder being the "**DIP Obligations**") as set forth in the promissory note attached as **Exhibit D** (the "**DIP Note**").

## BACKGROUND

11. The Debtor manufactures new and remanufactured ammunition in a large variety of calibers for consumer and governmental purposes.

12. Prior to the Petition Date, Mr. Scott routinely made unsecured loans to the Debtor to fund its operations. *See* **Exhibit C**.

13. The majority of the Debtor's value arises from its ongoing operations and its ability to continue supplying ammunition to its customers. Without authority

to obtain post-petition financing: (i) the Debtor will suffer irreparable harm; (ii) its reputation will be impaired; (iii) it will be unable to continue to supply ammunition to its customers; and (iv) its employees and customers will abandon it because the Debtor will not be able to pay for their services or service their contracts.

14. On the Petition Date, the Debtor filed its *First Day Motion for Entry of an Order Authorizing the Debtor to Use Cash Collateral and Granting Adequate Protection* [ECF No. 11] (the "**Cash Collateral Motion**"), which sought among other things, the approval of the DIP Loan. *See* ECF No. 11, ¶ 22.

15. The Office of the United States Trustee (the "**UST**") informally objected the relief sought in the Cash Collateral Order because, among other thing, it provided for the DIP Loan. However, the UST suggest the request for the DIP Loan be brought by separate motion.

16. However, absent the DIP Loan, the Debtor's cash flows may go negative in weeks three threatening on-going operations and viability of the Debtor and its ability to reorganization. *See* **Exhibit B**.

17. The Debtor needs to borrow $37,000 to avoid immediate and irreparable harm to the Debtor and maintain its operations as a going concern.

18. Therefore, the DIP Loan is required to preserve the value of the Debtor's estate by maintaining its business operations for the benefit of all creditors

of the Debtor, allowing the Debtor the opportunity to reorganize it business, and maximizing the value of the business as going concern.

## RELIEF REQUESTED

19. Through this Motion, the Debtor seeks entry of an Interim and Final Order, substantially in the form attached hereto as **Exhibit A**, authorizing the Debtor to incur the DIP Loan on an interim basis pending a final hearing.

20. The DIP Loan is comprised of the following principal terms[3]:

a. DIP Loan. The post-petition financing is to be provided to Debtor by Michael Scott, Jr. (the "**DIP Lender**") consisting of a loan in an amount not to exceed the aggregate principal amount of $50,000, memorialized in the DIP Note (the "**DIP Obligations**").

b. Draw Amount. The Debtor shall be entitled to request draws (the "**Draws**") on the DIP Loan for all reasonable and necessary expenses identified in the Budget.

c. Interest. The non-default interest rate on the DIP Loan shall be seven percent (7%) and the default interest rate shall be nine percent (9%).

d. Event of Default. The occurrence of any of the following shall, at the option of the DIP Lender, constitute a "**DIP Event of Default**":

   i. The Debtor does not pay on the Maturity Date any amount payable pursuant to any of the DIP Note or the order approving the same, at the place and in the amount required to be paid.

   ii. The Debtor does not comply with any provision of the DIP Note, the Interim Order, or any Final Order entered in this Case.

[3] This is a summary of certain key provisions, reference should be made to **Exhibit A** for the exact terms of the proposed financing order.

iii. This Court shall enter any order(s): (i) amending, reversing, revoking, supplementing, altering, staying, vacating, rescinding, or otherwise modifying the Interim Order or any order with respect to this Case affecting in any material respect the DIP Note, (ii) appointing a Chapter 11 trustee or an examiner in the case with enlarged powers relating to the operation of the business of the Debtor pursuant to section 1104, (iii) dismissing this Case or converting this Case to a case under Chapter 7 of the Bankruptcy Code.

e. Acceleration. All DIP obligations shall be immediately due and payable and all commitments to extend credit under the DIP Note shall terminate the earlier of: (i) a DIP Event of Default or (ii) the Maturity Date (the "**Termination Date**"), unless the Termination Date is extended by written stipulation of the DIP Lender, and the Debtor or further order of this Court.

f. Remedies. Upon the occurrence and continuation of a monetary DIP Event of Default or an uncured non-monetary DIP Event of Default, following the DIP Lender providing three (3) days' written notice, which shall be provided via email to the Debtor, all secured creditors, and to the UST, subject to compliance with any order approving the DIP Loan, all of the DIP Obligations shall become immediately due and payable, without any further demand, notice, further order of this Court or legal process of any kind, and the DIP Lender may file a motion with this Court seeking emergency relief for further order of this Court modifying the automatic stay in this Case to permit the DIP Lender to exercise any and all rights and remedies against the Debtor as provided herein, in the DIP Note, and other applicable law, or otherwise, including but not limited to, exercising any other rights or remedies available to the DIP Lender under the Interim Order, the DIP Note, the Bankruptcy Code, applicable law, equity, or otherwise.

## **Basis for Relief**

21. Section 364 allows a debtor to obtain credit or incur debt by: (a) obtaining unsecured credit in the ordinary course of business; (b) obtaining unsecured credit outside the ordinary course of business; or (c) obtaining credit on a super priority or secured basis. *See* 11 U.S.C. §364. Here, the Debtor seeks to obtain unsecured credit in the ordinary course of business structured under section 364(a), or, in the alternative, the Debtor seeks to obtain unsecured credit outside the ordinary course under section 364(b).

22. Sections 364(a) and (b) permits the Debtor, absent any court order to the contrary, to obtain unsecured credit and incur unsecured debt "allowable under section 503(b)(1) as an administrative expense." Section 503(b)(1) allows, after notice and hearing, administrative expenses, including but not limited to the "actual necessary costs of preserving the estate".

23. Here, because the majority of the Debtor's value, and therefore the value of the Debtor's estate to its creditors, rests upon its continued business operations, and because those operations face imminent risk of cessation if the Debtor cannot obtain the DIP Loan, the DIP Loan should be understood as an "actual, necessary" cost or expense of preserving the estate and therefore be an allowable administrative expense under section 503(b)(1).

24. The DIP Lender has historically provided similar financing to the Debtor throughout the course of his relationship with the Debtor. *See* **Exhibit C**.

25. Thus, the DIP Loan is a loan in the ordinary course of business between the Debtor and Mr. Scott, and the Debtor should be authorized obtain the DIP Loan under section 364(a) as an allowable administrative expense under section 364(a).

26. Alternatively, even if the DIP Loan is not in the ordinary course of business under section 364(a), section 364(b) gives this Court the power to authorize the Debtor to obtain unsecured credit or incur unsecured debt outside the ordinary course of business.

27. Absent authority to obtain the DIP Loan, the Debtor may not be able to cover costs necessary to preserve its going concern value of the estate, maximize the value of its assets, and propose a confirmable plan of reorganization to the detriment of all creditors of the Debtor.

28. The ability for a debtor to enter into post-petition financing arrangements under section 364 is governed by the business judgment standard. *See* In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in

interest."). *See also* In re Farmland Indus., Inc., 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (noting that approval of post-petition financing requires, inter alia, an exercise of "sound and reasonable business judgment"); In re Ryan Int'l Airlines, Inc., 2010 WL 11834046 at *11 (Bankr. N.D. Ill. Dec. 9, 2010) ("Provided that a Debtor's business judgment does not run afoul of the provisions of, and policies under the Bankruptcy Code, Courts grant the Debtor considerable deference in acting in accordance therewith.") (relying on In re Ames, 115 B.R., *et al.*).

29. The terms of the DIP Note are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and the DIP Obligations constitute reasonably equivalent value and fair consideration.

30. The DIP Lender is a statutory insider of the Debtor. *See* 11 U.S.C. §101(31)(B) ("if the Debtor is corporation (iii) person in control of the Debtor"). The DIP Lender is the responsible person for, and in control of, the Debtor. While section 364 does not impose a different statutory standard for insider lenders, Sixth Circuit precedent and bankruptcy jurisprudence require heightened scrutiny of transactions involving insiders. *See* In re Autostyle Plastics, Inc., 269 F.3d 726 (6th Cir. 2001) (business dealings between the Debtor and an insider must be scrutinized more rigorously by the courts). *See also* In re Harvey Goldman Co., 2011 Bankr. LEXIS 3149 (Bankr. E.D. Mich. Aug. 24, 2011) ("[a]n insider is one who has a sufficiently close relationship with the Debtor that his conduct is made subject to

closer scrutiny than those dealing at arm's length with the Debtor.") (citations omitted).

31. The good faith requirement under section 364(e) is particularly relevant when the lender is an insider. *See* In re Grand Valley Sport and Marine, 143 B.R. 840, 848 (Bankr. W.D. Mich. 1992) ("A bankruptcy court must make an explicit good faith finding at the time of the post-petition financing hearing to afford a post-petition lender protection under § 364(e)."). Section 364(e) protects the validity of post-petition financing authorized by the court, even if the authorization is later reversed or modified on appeal, provided the lender extended credit in good faith. *See* id.

32. The DIP Note has been negotiated in good faith, in furtherance of the Debtor's fiduciary duties, based on the terms of the DIP Note, which represent an arm's length and reasonable loan arrangement among the Debtor and the DIP Lender, at a clearly below-market rate of interest for similar loans in the marketplace. As set forth in more detail in the DIP Order, and to ensure all rights, remedies, privileges, and benefits granted under section 364(e) are extended the DIP Lender, no later reversal or modification of the DIP Loan, the DIP Note, or any DIP Obligation shall have any effect on the validity or enforceability of same.

33. The Debtor requests entry of the DIP Order in accordance with FRBP 4001(b)(2) and 4001(c)(2), and Local Rule 4001-2. Absent granting the relief set

forth therein, the Debtor's estate will be immediately and irreparably harmed. Consummation of the DIP Note in accordance with the proposed Interim Order is therefore in the best interest of the Debtor's estate.

34. This Court has granted similar relief in other cases. *See, i.e.,* South Town by 4M, LLC, Case No. 26-40805-lsg (Bankr. E.D. Mich.), ECF No. 105.

## CONCLUSION

35. Based on the foregoing, Debtor respectfully requests that the Court enter the Interim Order, and that such Interim Order be effective immediately upon entry pursuant to Bankruptcy Rule 6004. The Debtor submits that immediate relief is necessary to avoid irreparable harm to the Debtor's estate, as the Debtor would be unable to preserve the value of its estate to the detriment of all creditors of Debtor's estate.

## NOTICE

36. Notice of this Motion will be given as required by FRBP 4001(b)(1)(C) to (i) the United States Trustee for the Eastern District of Michigan, (ii) identified Secured Creditors, (iii) the Debtor's twenty largest unsecured creditors, and (iv) all other parties who are required to be served under Fed. R. Bankr. P. 4001(d).

**WHEREFORE**, the Debtor respectfully requests that the Court: (i) enter the Interim Order; (ii) waive the stay of for any period, immediately granting the relief

requested in this Motion; and (iii) grant any additional relief as is just and equitable under the circumstances.

Respectfully, Submitted,

SCHAFER AND WEINER, PLLC

/s/ John J. Stockdale, Jr.
JOHN J. STOCKDALE, JR. (P71561)
Attorneys for Debtor
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
(248) 540-3340
jstockdale@schaferandweiner.com

Dated: September 2, 2026

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re: Case No. 26-49251

WARRIOR SPORTS HOLDINGS, LLC, In Proceedings Under Chapter 11

Debtor.
_______________________________/ Hon. Lisa S. Gretchko

**INTERIM ORDER GRANTING DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION UNSECURED FINANCING**

This matter came before the Court upon the Debtor's *Motion for Entry of an Order Authorizing the Debtor to Obtain Post-Petition Unsecured Financing* (the "**Motion**"; ECF No. ___), seeking, among other things, entry of an interim order (the "**Interim Order**") authorizing the Debtor to obtain post-petition financing, notice having been given, oral argument having been heard, and it appearing to the Court as follows;

**THE COURT HEREBY FINDS** that:

A. Good and sufficient cause has been shown for the entry of this Interim Order and the relief granted herein is necessary to avoid immediate and irreparable harm to the Debtor and its estate. [1]

[1] Capitalized terms used but not defined in this Order shall have the meaning ascribed to them in the Motion.

B. The Debtor has an immediate and critical need to obtain financing in the total amount of $37,000 to maintain its business operations, in order to allow the Debtor to maintain its going concern value and maximize its value for all creditor constituencies.

C. The Debtor is unable to obtain financing on more favorable terms from sources other than the DIP Lender under the DIP Note.

D. The terms of the DIP Note are objectively fair and reasonable, and the obligations set forth therein constitute reasonably equivalent value and fair consideration.

E. The DIP Note represents a reasonable loan arrangement between the Debtor and the DIP Lender.

F. The Debtor has requested entry of this Interim Order pursuant to Fed. R. Bankr. P. 4001(c)(2). Absent granting the relief set forth in this Interim Order, the Debtor's estate will be immediately and irreparably harmed. Delivery of the DIP Note in accordance with this Interim Order is in the best interests of the Debtor's estate.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that:

1. The Motion is granted in accordance with the terms of this Interim Order.

2. The Debtor is authorized to borrow money from Michael Scott, Jr., the Debtor's responsible person, in an aggregate principal amount of up to $50,000.00, and $37,000.00 through the date of a Final Order, pursuant to the terms of the DIP Note, which borrowing shall be used only for maintenance of the business operations of the Debtor.

3. The Debtor is authorized to execute and deliver the DIP Note.

4. Upon the Debtor's execution and delivery of the DIP Note, the DIP Note and the obligations set forth therein shall constitute valid, binding and unavoidable obligations of the Debtor, enforceable against Debtor in accordance with the terms thereof and of this Interim Order.

5. In the event of any of the following, the DIP Lender may request the Court's determination that such occurrence is an "Event of Default" and seek appropriate remedies for same: (i) amending, reversing, revoking, supplementing, altering, staying, vacating, rescinding, or otherwise modifying the Interim Order or any order with respect to this Case affecting in any material respect the DIP Note, (ii) an order converting or dismissing this Bankruptcy Case; (iii) an order appointing a chapter 11 trustee in this Bankruptcy Case, without the consent of the DIP Lender; or (iv) an order appointing an examiner with enlarged powers in this Bankruptcy Case.

6. Pursuant to section 364(e) of the Bankruptcy Code, if any or all of the provisions of this Interim Order are hereafter reversed or modified on appeal then, absent a stay pending appeal, such reversal or modification shall not affect (i) the validity of any of the Debtor's obligations to the DIP Lender incurred prior to the pendency of the appeal.

7. The proceeds of the DIP Loan shall only be used in accordance with the terms of DIP Note, the Budget, and this Order.

8. All obligations under the DIP Note shall be immediately due and payable upon (i) an Event of Default, or (ii) as set forth in the DIP Note.

9. This Court shall retain jurisdiction to enforce this Order according to its terms. In the event of any inconsistency between the provisions of this Order and the DIP Note, the provisions of this Order shall govern.

10. This Order shall be immediately effective and enforceable upon its entry.

11. The Debtor shall, within twenty-four (24) hours following the entry of this Order, serve copies of this Order on (i) the 20 largest unsecured creditors, (ii) all secured creditors, (iii) the United States Trustee's Office, and (iv) all other parties who are required to be served under Fed. R. Bankr. P. 4001(d).

12. All parties seeking to object to this Order must file a written objection on or before September __, 2026 at 5:00 p.m. prevailing Eastern time, except that an official committee may file objections withing 14 days after it is served with this

Order. If an objection is timely filed, the final hearing on this Order will be held before the Honorable Lisa S. Gretchko, United States Bankruptcy Judge, in courtroom 1975, located at 211 West Fort Street, Detroit, Michigan, on September ___, 2026 at __:00 [a.m./p.m.]. If no timely objection is filed, then this Order will become a final order without a further hearing, and the Debtor will be authorized to borrow funds up to $50,000 for those expenses referenced in the Motion, as well as any other expenses necessary for operating the business in the ordinary course going forward.

# EXHIBIT B

| DATE 8/26/2026 | 8/18/2026 | 8/25/2026 | 9/1/2026 | 9/8/2026 | 9/15/2026 | 9/22/2026 | 9/29/2026 | 10/6/2026 | 10/13/2026 | 10/20/2026 | 10/27/2026 | 11/3/2026 | 11/10/2026 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WEEK | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | |
| BEG. CASH | 3,718.20 | 56,167.00 | (14,593.00) | 126.90 | 15,378.90 | 8,857.90 | 66,900.90 | 454.90 | 49,221.90 | 47,458.06 | 116,081.06 | 53,481.06 | 37,470.06 | |
| SALES-CC & Instore | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | |
| LOC [1] | | | 37,000 | | | | 2,000.00 | | | | | | | |
| A/R | | 22,190.00 | | | | | | | | | | | | |
| RECURRING DEALER ORDERS 9MM | - | - | 19,500.00 | 19,500.00 | 39,000.00 | 39,000.00 | 39,000.00 | 39,000.00 | 39,000.00 | 39,000.00 | 39,000.00 | 39,000.00 | 39,000.00 | |
| 762 X 39 ORDERS | | 0 | | 62400 | | 62,400.00 | | 62,400.00 | | 62,400.00 | | - | | |
| MISC DEALER ORDERS | 0 | 0 | 87320 | 0 | 20000 | 20000 | 20000 | 20000 | 20000 | 20000 | 20000 | 20000 | 20000 | |
| PROJECTED SUBSONIC ORDERS | | | | | 30,000.00 | | | | 40,000.00 | | | | 40,000.00 | |
| A/R COLLECTION TOTAL | 2,000.00 | 24,190.00 | 145,820.00 | 83,900.00 | 91,000.00 | 123,400.00 | 63,000.00 | 123,400.00 | 101,000.00 | 123,400.00 | 61,000.00 | 61,000.00 | 101,000.00 | |
| FREIGHT 3% OF SALES | 2,400.00 | 2,400.00 | 4,374.60 | 2,517.00 | 2,730.00 | 3,702.00 | 1,890.00 | 3,702.00 | 3,030.00 | 3,702.00 | 1,830.00 | 1,830.00 | 3,030.00 | |
| PROJECTED COGS ON CC-Instore 40%GPM | - | - | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | |
| PROJECTED COGS ON 9mm 27.5% GPM | - | 13,000.00 | 14,137.50 | 28,275.00 | 28,275.00 | 28,275.00 | 28,275.00 | 28,275.00 | 28,275.00 | 28,275.00 | 28,275.00 | 28,275.00 | 28,275.00 | |
| PROJECTED COGS ON 762x39 28.5% GPM | - | - | 44,616.00 | - | 44,616.00 | - | 44,616.00 | - | 44,616.00 | - | - | - | | |
| PROJECTED COGS ON MISC DEALER ORDERS 32.5% | - | 52,100.00 | - | 13,500.00 | 13,500.00 | 13,500.00 | 13,500.00 | 13,500.00 | 13,500.00 | 13,500.00 | 13,500.00 | 13,500.00 | 13,500.00 | |
| PROJECTED COGS ON SUBSONIC 52% GPM | - | - | - | 14,400.00 | - | - | - | 19,200.00 | - | - | - | 19,200.00 | - | |
| GUN POWDER STOCK | | 4000 | 30000 | 0 | 0 | | | | | | 30,000.00 | | | |
| COGS TOTAL | 2,400.00 | 71,500.00 | 94,328.10 | 59,892.00 | 90,321.00 | 46,677.00 | 89,481.00 | 65,877.00 | 90,621.00 | 46,677.00 | 74,805.00 | 64,005.00 | 46,005.00 | |
| SGA | | | | | | | | | | | | | | |
| Auto Insurance & Expense | | | | 656.00 | | | | 656 | | | | 656.00 | | |
| Bank Service Charges | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | |
| Credit Card Fees | | 1,000.00 | | | | | 1000 | | | | 1,000.00 | | | |
| Computer & Webservices | | | 1100 | | | | 1,100.00 | | | | 1100 | | | |
| AUTO LEASE | | | 750.00 | | - | | 750.00 | | - | | | 750.00 | | |
| Insurance (WC+GL+Prop) | | 4270 | | | | | 4270 | | | | 4270 | | | |
| Residential Rent | | | | | | | | | | | | | | |
| MTS Salary | | - | 5000 | | 5,000.00 | - | 5,000.00 | - | 5,000.00 | - | 5,000.00 | - | | |
| Officer Life | | 907.00 | | | | 907.00 | | | | | 907.00 | | | |
| Miscellaneous-Office-Meals/Travel | | | 500 | | | | 500 | | | | 500.00 | | | |
| Machinery Repair & Maint | | | 500.00 | | | 500 | | | 500 | | | 500 | | |
| Payroll ( SHOP, Admin) | | 7000 | | 7000 | | 7000 | | 7000 | | 7000 | | 7000 | | |
| Payroll Taxes | | 700 | | 700 | | 700 | | 700 | | 700 | | 700 | | |
| Professional Fees - CPA/Attorney-HITS CC | | | 7,500.00 | | | | 7,500.00 | - | | | 7,500.00 | - | 7,500.00 | |
| Rent or Lease | | 7,426.00 | | | | 7426 | | | | | 7,426.00 | | | |
| Excise Taxes-10% | | | | | | | | | | | 2,500.00 | | | |
| Supplies - cleaning, maintenance, Prop Tax | | 1,000.00 | | | | 1,000.00 | | | | | 1,000.00 | | | |
| Utilities & Telephone | | | | | 1,800.00 | | | | 1,800.00 | | | | 1,800.00 | |
| STORAGE | | 747.00 | | | | 747 | | | | | 747.00 | | | |
| Quickbooks Processing fees | | | 3000 | | | | 3,000.00 | | | | | 3,000.00 | | |
| TOTAL SGA | 400.00 | 23,450.00 | 18,750.00 | 8,756.00 | 7,200.00 | 18,680.00 | 23,520.00 | 8,756.00 | 7,700.00 | 8,100.00 | 32,350.00 | 13,006.00 | 9,700.00 | |
| TOTAL DISBURSEMENTS | 2,800.00 | 94,950.00 | 113,078.10 | 68,648.00 | 97,521.00 | 65,357.00 | 113,001.00 | 74,633.00 | 98,321.00 | 54,777.00 | 107,155.00 | 77,011.00 | 55,705.00 | |
| TOTAL COLLECTION | 2,000.00 | 24,190.00 | 145,820.00 | 83,900.00 | 91,000.00 | 123,400.00 | 63,000.00 | 123,400.00 | 101,000.00 | 123,400.00 | 61,000.00 | 61,000.00 | 101,000.00 | |
| net profit | | | | | | | | | | | | | | |
| Pathward Adequate Protection | 0 | 0 | 16445 | | | 0 | 16445 | | | 0 | 16445 | | 16445 | |
| Utlity Deposit Account | 0 | 0 | 1,577 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | |
| reserved | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | |
| United States Trustee Fees | | | | | | | | | 4,442.84 | | | | | |
| End Cash Post Deb Service | 2,918.20 | (14,593.00) | 126.90 | 15,378.90 | 8,857.90 | 66,900.90 | 454.90 | 49,221.90 | 47,458.06 | 116,081.06 | 53,481.06 | 37,470.06 | 66,320.06 | |
| Net profits from operations | (800.00) | (70,760.00) | 32,741.90 | 15,252.00 | (6,521.00) | 58,043.00 | (50,001.00) | 48,767.00 | 2,679.00 | 68,623.00 | (46,155.00) | (16,011.00) | 45,295.00 | 81,152.90 |

[1] Insider unsecured post-petition loan made in week three. Motion to approve same to be filed.

# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Case No. 26-49251 |
| WARRIOR SPORTS HOLDINGS, LLC, | In Proceedings Under Chapter 11 |
| Debtor. ______________________________/ | Hon. Lisa S. Gretchko |

**DECLARATION OF MICHAEL SCOTT, JR., RESPONSIBLE PERSON FOR DEBTOR WARRIOR SPORTS HOLDINGS, LLC**

I, **MICHAEL SCOTT, JR.**, hereby declare:

1. I am the sole member and manager of Warrior Sports Holdings, LLC d/b/a Precision One Ammunition (the "**Debtor**"), a Michigan limited liability company, with its principal place of business at 2701 Wambaw Creek Rd., Charleston, SC 29492.

2. Debtor manufactures new and remanufactured ammunition in a large variety of calibers for consumer and governmental purposes (the "**Business**").

3. I am responsible for devising and implementing the Debtor's business plans and strategies, overseeing the Debtor's finances and operational and legal affairs, supervising the maintenance of its books and records, and overseeing the manufacturer and sale of firearms. I have been involved in the Debtor's restructuring process (the "**Restructuring Process**"), which includes (i) participating in the development, negotiation and implementation of various strategic alternatives for

restructuring, and reducing or modifying the Debtor's indebtedness, (ii) managing professionals engaged by the Debtor in connection with the Restructuring Process, and (iii) supervising the preparation of documentation needed to implement the Restructuring Process.

4. Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with the Debtor's personnel and professionals, my knowledge and review of relevant documents including the Debtor's books and records, or my opinion based on my experience, knowledge, and information concerning the Debtor's operations and financial condition. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

5. The Debtor has seeks authority to incur unsecured debt to me in a motion filed with this Court (the "**Motion**"), the proceeds of which will be used to continue to fund Debtor's business operations, thereby maintaining and preserving the going concern value of its estate for its creditors. I believe the relief sought in the Motion is necessary for the preservation of the value of the Debtor's estate.

6. As set forth in the Budget, attached to the Motion as Exhibit B, I intend to loan the Debtor up to $50,000 on an unsecured basis in week three of the Budget and through confirmation of a plan of reorganization, subordinated to the Debtor's professionals' fees.

7. Historically, I have lent money to the Debtor to cover its operating costs when the Debtor was short on funds, and, as a result, the DIP Loan is within the Debtor's ordinary course of business. **Exhibit 1** to this Declaration reflects historical loans from me to the Debtor.

8. Without the ability to make the payments as set forth in the Budget, the Debtor may be unable to reorganize in Chapter 11 and may be forced to shut down. The majority of the Debtor's value arises from the value of its ongoing operations. If the Debtor is unable to operate within the Chapter 11 environment, the Debtor's value will be destroyed. Accordingly, authorizing the Debtor to incur the DIP Loan as set forth in the Budget is in the best interests of all creditors and parties-in-interest.

9. Accordingly, the Debtor needs to borrow up to $37,000.00 between now and that date of a final hearing, which is estimated to be 21 days, to avoid immediate and irreparable harm.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/ s / Michael Scott, Jr.
Michael Scott, Jr.
Responsible Person of the Debtor

EXHIBIT 1

**Warrior Sports Holdings LLC**
**Transaction Report**
**September, 2023-August, 2026**

| | Transaction date | Transaction type | Num | Name | Description | Account Name | Item split account | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 24000 LOC – Shareholder | | | | | | | | | |
| | 11/14/2023 | Deposit | | | Shareholder loan from Mike Scott LOC | 24000 LOC – Shareholder | Checking - 4625 | 25,000.00 | 25,000.00 |
| | 11/17/2023 | Deposit | | | Counter Credit. Shareholder loan from Mike Scott LOC | 24000 LOC – Shareholder | Checking - 4625 | 50,000.00 | 75,000.00 |
| | 02/07/2024 | Deposit | | | Counter Credit | 24000 LOC – Shareholder | Checking - 4625 | 95,000.00 | 170,000.00 |
| | 04/11/2024 | Deposit | | | Counter Credit | 24000 LOC – Shareholder | Checking - 4625 | 15,000.00 | 185,000.00 |
| | 07/23/2024 | Deposit | | | Counter Credit | 24000 LOC – Shareholder | Checking - 4625 | 10,000.00 | 195,000.00 |
| | 08/01/2024 | Deposit | | | Counter Credit | 24000 LOC – Shareholder | Checking - 4625 | 10,000.00 | 205,000.00 |
| | 09/04/2024 | Deposit | | | MScott | 24000 LOC – Shareholder | Checking - 4625 | 5,000.00 | 210,000.00 |
| | 09/25/2024 | Deposit | | | Counter Credit | 24000 LOC – Shareholder | Checking - 4625 | 7,000.00 | 217,000.00 |
| | 02/03/2025 | Deposit | | | Counter Credit | 24000 LOC – Shareholder | Checking - 4625 | 12,000.00 | 229,000.00 |
| | 02/27/2025 | Deposit | | | | 24000 LOC – Shareholder | Checking - 4625 | 10,000.00 | 239,000.00 |
| | 03/27/2025 | Deposit | | Michael T Scott | | 24000 LOC – Shareholder | Checking - 4625 | 15,000.00 | 254,000.00 |
| | 04/03/2025 | Deposit | | Michael T Scott | | 24000 LOC – Shareholder | Checking - 4625 | 1,500.00 | 255,500.00 |
| | 04/24/2025 | Deposit | | | BKOFAMERICA MOBILE 04/24 XXXXX84011 DEPOSIT *MOBILE MI | 24000 LOC – Shareholder | Checking - 4625 | 9,000.00 | 264,500.00 |
| | 05/07/2025 | Deposit | | | BKOFAMERICA MOBILE 05/07 XXXXX00226 DEPOSIT *MOBILE MI | 24000 LOC – Shareholder | Checking - 4625 | 6,000.00 | 270,500.00 |
| | 05/08/2025 | Deposit | | Michael T Scott | | 24000 LOC – Shareholder | Checking - 4625 | 2,000.00 | 272,500.00 |
| | 05/12/2025 | Deposit | | Michael T Scott | | 24000 LOC – Shareholder | Checking - 4625 | 40,000.00 | 312,500.00 |
| | 05/13/2025 | Deposit | | Michael T Scott | | 24000 LOC – Shareholder | Checking - 4625 | 1,300.00 | 313,800.00 |
| | 05/19/2025 | Deposit | | Michael T Scott | | 24000 LOC – Shareholder | Checking - 4625 | 10,000.00 | 323,800.00 |
| | 05/29/2025 | Deposit | | | BKOFAMERICA MOBILE 05/29 XXXXX22516 DEPOSIT *MOBILE MI | 24000 LOC – Shareholder | Checking - 4625 | 400.00 | 324,200.00 |
| | 06/03/2025 | Deposit | | | BKOFAMERICA MOBILE 06/03 XXXXX68833 DEPOSIT *MOBILE MI | 24000 LOC – Shareholder | Checking - 4625 | 4,500.00 | 328,700.00 |
| | 06/17/2025 | Deposit | | | WIRE TYPE:WIRE IN DATE: 250617 TIME:1003 ET TRN:XXXXXXXXXX327532 SEQ:XXXXX23168FS/012398 ORIG:1/MICHAEL SCOTT ID:XXXXX07251 SND BK:JPMORGAN CHASE BANK, NA ID:XXXXX0021 PMT DET:SWF OF 25/06/ 17 | 24000 LOC – Shareholder | Checking - 4625 | 50,000.00 | 378,700.00 |
| | 07/01/2025 | Deposit | | | BKOFAMERICA MOBILE 07/01 XXXXX84646 DEPOSIT *MOBILE MI | 24000 LOC – Shareholder | Checking - 4625 | 10,000.00 | 388,700.00 |
| | 07/02/2025 | Deposit | | | BKOFAMERICA MOBILE 07/02 XXXXX04487 DEPOSIT *MOBILE MI | 24000 LOC – Shareholder | Checking - 4625 | 4,000.00 | 392,700.00 |
| | 07/17/2025 | Deposit | | Michael T Scott | BKOFAMERICA MOBILE 07/17 XXXXX87487 DEPOSIT *MOBILE MI | 24000 LOC – Shareholder | Checking - 4625 | 5,000.00 | 397,700.00 |
| | 07/24/2025 | Deposit | | Michael T Scott | WIRE TYPE:WIRE IN DATE: 250724 TIME:1248 ET TRN:XXXXXXXXXX473812 SEQ:XXXXX29205FS/019590 ORIG:MICHAEL SCOTT SARA SCOTT ID:XXXXX07251 SND BK:JPMORGAN CHASE BANK, NA ID:XXXXX0021 PMT DET:XXXXX29205FS /LOCINS/CTRC /INS/NFSCUS3B | 24000 LOC – Shareholder | Checking - 4625 | 10,000.00 | 407,700.00 |
| | 07/31/2025 | Deposit | | Michael T Scott | BKOFAMERICA MOBILE 07/31 XXXXX61470 DEPOSIT *MOBILE MI | 24000 LOC – Shareholder | Checking - 4625 | 1,500.00 | 409,200.00 |
| | 08/01/2025 | Deposit | | Michael T Scott | WIRE TYPE:WIRE IN DATE: 250801 TIME:1240 ET TRN:XXXXXXXXXX473337 SEQ:XXXXX38213FS/029860 ORIG:MICHAEL SCOTT SARA SCOTT ID:XXXXX07251 SND BK:JPMORGAN CHASE BANK, NA ID:XXXXX0021 PMT DET:XXXXX38213FS /LOCINS/CTRC /INS/NFSCUS3B | 24000 LOC – Shareholder | Checking - 4625 | 5,800.00 | 414,800.00 |
| | 08/15/2025 | Deposit | | Michael T Scott | WIRE TYPE:WIRE IN DATE: 250815 TIME:0915 ET TRN:XXXXXXXXXX313245 SEQ:XXXXX52227FS/011696 ORIG:BEAR FOOD AND BEVERAGE CL ID:XXXXX76881 SND BK:JPMORGAN CHASE BANK, NA ID:XXXXX0021 PMT DET:XXXXX52227FS /LOCINS/CTRC /INS/NFSCUS3B | 24000 LOC – Shareholder | Checking - 4625 | 15,000.00 | 429,800.00 |
| | 09/15/2025 | Deposit | | Michael T Scott | FID BKG SVC LLC DES:ACH ID:XXXXX7688 4CFEC INDN:WARRIOR SPORTS HOLDING CO ID:XXXXX41375 PPD | 24000 LOC – Shareholder | Checking - 4625 | 10,000.00 | 439,800.00 |
| | 10/09/2025 | Deposit | | Michael T Scott | FID BKG SVC LLC DES:ACH ID:XXXXX7688 4H41E INDN:WARRIOR SPORTS HOLDING CO ID:XXXXX85576 PPD | 24000 LOC – Shareholder | Checking - 4625 | 6,000.00 | 445,800.00 |
| | 11/19/2025 | Deposit | | Michael T Scott | FID BKG SVC LLC DES:ACH ID:XXXXX7688 4OUCE INDN:WARRIOR SPORTS HOLDING CO ID:XXXXX41375 PPD | 24000 LOC – Shareholder | Checking - 4625 | 14,000.00 | 459,800.00 |
| | 01/06/2026 | Deposit | | Michael T Scott | FID BKG SVC LLC DES:ACH ID:XXXXX7688 4ZOA7 INDN:WARRIOR SPORTS HOLDING CO ID:XXXXX41375 PPD | 24000 LOC – Shareholder | Checking - 4625 | 13,000.00 | 472,800.00 |
| | 01/09/2026 | Deposit | | Michael T Scott | FID BKG SVC LLC DES:ACH ID:XXXXX7688 50DJX INDN:WARRIOR SPORTS HOLDING CO ID:XXXXX85576 PPD | 24000 LOC – Shareholder | Checking - 4625 | 7,000.00 | 479,800.00 |
| | 03/02/2026 | Deposit | | Michael T Scott | FID BKG SVC LLC DES:ACH ID:XXXXX7688 5BKNA INDN:WARRIOR SPORTS HOLDING CO ID:XXXXX85576 PPD | 24000 LOC – Shareholder | Checking - 4625 | 10,000.00 | 489,800.00 |
| | 04/10/2026 | Deposit | | | WIRE TYPE:WIRE IN DATE: 260410 TIME:1335 ET TRN:XXXXXXXXXX479173 SEQ:XXXXX51100JS/026768 ORIG:BEAR FOOD AND BEVERAGE CL ID:XXXXX76881 SND BK:JPMORGAN CHASE BANK, NA ID:XXXXX0021 PMT DET:WD89710237 /CATPURP/CTRC /LOCINS/CTRC /INS | 24000 LOC – Shareholder | Checking - 4625 | 9,000.00 | 498,800.00 |
| | 05/12/2026 | Deposit | | Michael T Scott | Online Banking transfer from CHK 2418 Confirmation# XXXXX47588 | 24000 LOC – Shareholder | Checking - 2418 | 20,000.00 | 518,800.00 |
| | 08/18/2026 | Deposit | | Michael T Scott | FID BKG SVC LLC DES:ACH ID:XXXXX7688 6HBW5 INDN:WARRIOR SPORTS HOLDING CO ID:XXXXX41375 PPD | 24000 LOC – Shareholder | Checking - 4625 | 30,000.00 | 548,800.00 |
| | 08/19/2026 | Deposit | | Michael T Scott | FID BKG SVC LLC DES:ACH ID:XXXXX7688 6HQ72 INDN:WARRIOR SPORTS HOLDING CO ID:XXXXX41375 PPD | 24000 LOC – Shareholder | Checking - 4625 | 5,000.00 | 553,800.00 |
| Total for 24000 LOC – Shareholder | | | | | | | | $553,800.00 | |
| TOTAL | | | | | | | | $553,800.00 | |

Accrual Basis Monday, August 31, 2026 03:43 PM GMT-04:00

# EXHIBIT D

**POST-PETITION FINANCING NOTE**[1]

Dated: September ____, 2026

**FOR VALUE RECEIVED, Warrior Sports Holdings, LLC,** ("Borrower"), Debtor in Chapter 11 Case No. 26-49251-lsg in the U.S. Bankruptcy Court for the Eastern District of Michigan (the "Chapter 11 Case") promises to pay to the order of **Michael Scott, Jr.** ("Lender") on the Maturity Date (as defined herein) at c/o Taunt Law Firm, 3001 W. Big Beaver Rd., Ste. 100, Troy, MI 48084, or at such other place as Lender may designate in writing, the principal sum equal to Fifty Thousand Dollars ($50,000.00) or so much as has been advanced by Lender and not repaid pursuant to this Post-Petition Financing Note (the "Note"), plus interest as hereinafter provided, in lawful money of the United States.

No advance shall be made hereunder following an Event of Default, unless permitted by Lender in its sole discretion.

This is a Note under which advances and repayments, including re-advances, may be made from time to time, and which indebtedness may increase or decrease from time to time; *provided, however*, the aggregate principal amount outstanding hereunder shall not exceed the maximum principal amount of this Note at any time.

All funds advanced must be used in accordance with the order of the United States Bankruptcy Court for the Eastern District of Michigan in (i) the Borrower's chapter 11 bankruptcy case approving this Note and the debtor-in-possession financing from the Lender to the Borrower (the "DIP Approval Order") and (ii) the DIP Loan Documents[2] (as defined below and in the DIP Approval Order), and that the funds requested are needed by the Borrower for the purposes permitted thereunder. The Borrower shall use advances under this Note only for payment of actual and/or necessary costs of operation of the Borrower, as set forth in the Budget (as defined in the DIP Approval Order).

The Borrower's ability to request advances under this Note shall terminate on the earlier of an Event of Default (as described below) or the Maturity Date (the "Termination Date"), unless the Termination Date is extended by written stipulation of Lender and the Borrower.

The unpaid principal balance outstanding from time to time under this Note shall bear interest at seven percent (7%) per annum. Interest shall be calculated on the basis of a 360 day

[1] Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the DIP Approval Order (as defined herein).

[2] "DIP Loan Documents" shall mean, collectively, this Note, the DIP Approval Order, and any other document, instrument or agreement evidencing or securing this Note, together with any and all modifications and amendments to any of the foregoing.

year for the actual number of days elapsed. In the event of default, the "Default Rate" shall be nine percent (9%) per annum.

The unpaid principal balance and all accrued interest thereon shall be due and payable in full on the effective date of Debtor's Chapter 11 Plan in the Bankruptcy Case (the "Maturity Date") (or earlier upon acceleration upon an Event of Default and the Termination Date).

Any payment made by the Borrower will be deemed tendered and received only upon actual receipt (time being of the essence) by Lender. Borrower hereby expressly assumes all risk of loss or liability resulting from non-delivery or delay in delivery of any payment transmitted by mail or in any other manner.

Borrower may prepay all or any portion of the indebtedness outstanding hereunder at any time, without premium or penalty.

Nothing herein contained, nor any transaction relating thereto, or hereto, shall be construed or operate to require the Borrower to pay, or be charged, interest at a greater rate than the maximum allowed by the applicable law relating to this Note. Should any interest or other charges, charged, paid or payable by the Borrower in connection with this Note, or any other document delivered in connection herewith, result in the charging, compensation, payment or earning of interest in excess of the maximum allowed by the applicable law as aforesaid, then any and all such excess shall be and the same is hereby waived by the holder, and any and all such excess paid shall be automatically credited against and in reduction of the principal due under this Note.

If any Event of Default (as defined in the DIP Approval Order) occurs under the DIP Approval Order, it shall also constitute an "Event of Default" under this Note.

Upon the occurrence of an Event of Default: (a) the entire unpaid principal balance and all accrued interest shall at the sole option of Lender be immediately due and payable, without presentment, demand, protest or any further notice or any other formalities of any kind, all of which are hereby expressly and irrevocably waived, together with (to the extent permitted under applicable law) the reasonable and documented costs, fees and expenses, including but not limited to attorneys' fees, reasonably incurred by Lender in connection with Borrower, including in collecting or enforcing payment, (b) the outstanding principal amount hereof shall bear interest at the Default Rate, (c) Lender may proceed to protect and enforce all or any of its rights, remedies, powers and privileges under this Note by action at law, suit in equity or other appropriate proceedings, and (d) any commitment or obligation, if any, on the part of Lender to make loans or otherwise extend credit to or in favor of Borrower shall immediately terminate.

All payments shall, at the option of Lender, first be applied against any and all fees, costs and expenses (including expenses of collection), then against accrued interest, and the balance against principal. Acceptance by Lender of any payment in an amount less than the amount then due shall be deemed an acceptance on account only, and the failure to pay the entire amount then due shall be and continue to be an Event of Default.

Borrower hereby waives presentment for payment, demand, notice of non-payment, notice of protest and protest of this Note, diligence in collection or bringing suit.

No delay or omission of the Lender to exercise any right under this Note impairs that right nor can it be construed to waive any Event of Default or acquiesce in any Event of Default, and the making of an advance notwithstanding the existence of an Event of Default or the inability of the Borrower to satisfy the conditions precedent to such advance does not constitute a waiver or acquiescence. Any single or partial exercise of any right does not preclude any other or further exercise of it or the exercise of any other right, and no waiver, amendment or other variation of the terms of this Note is valid unless in writing signed by Borrower and Lender, and then only to the extent that such writing specifies. All remedies contained in this Note or afforded by law are cumulative and all are available to the Lender until this Note has been paid in full. Advances made by Lender under this Note do not constitute a waiver of any defaults or Events of Default under prior promissory notes executed by Borrower in favor of Lender; all rights and remedies of Lender with respect to any such defaults or Events of Default are reserved.

The Borrower must reimburse the Lender for any reasonable and documented costs, charges and out-of-pocket expenses (including attorneys' fees) paid or reasonably incurred by the Lender in connection with the preparation, review, execution, delivery, amendment, modification, administration, collection and enforcement of this Note. The Borrower further indemnifies the Lender against all losses, claims, damages, penalties, judgments, liabilities and expenses (including without limitation all expenses of litigation or preparation for litigation whether or not the Lender is a party) which any of them pay or incur arising out of or relating to this Note or the direct or indirect application or proposed application of the proceeds of this Note.

The terms of this Note bind and benefit the Borrower and the Lender and their respective successors and assigns, except that the Borrower shall not assign its rights or obligations under this Note. The Lender may at any time assign to one or more entities all or any part of its rights and obligations under this Note, and the Borrower releases the Lender for the amount so assigned.

This Note is to be construed in accordance with the internal laws (but not the law of conflicts) of the State of Michigan.

**IN RECOGNITION OF THE HIGHER COSTS AND DELAY WHICH MAY RESULT FROM A JURY TRIAL, BORROWER AND LENDER WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING HEREUNDER OR IN CONNECTION WITH THE OBLIGATIONS, OR (B) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT HERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND BORROWER FURTHER WAIVES ANY RIGHT TO CONSOLIDATE ANY SUCH ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED; AND BORROWER HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT**

**ANY PARTY HERETO MAY FILE AN ORIGINAL COPY OF THIS NOTE WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF BORROWER TO THE WAIVER OF ITS RIGHT TO TRIAL BY JURY.**

**"BORROWER"**

**Warrior Sports Holdings LLC**,
A Michigan limited liability company

______________________________

By: Michael T. Scott, Jr.

Its: Sole Member

**ACCEPTED AND AGREED TO:**

**"LENDER"**

______________________
Michael Scott, Jr.